**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

| | |
|---|---|
| Mark M.,[1]<br><br>Plaintiff,<br><br>v.<br><br>Frank Bisignano, Commissioner of Social Security,<br><br>Defendant. | Case No. 25-cv-2218 (JFD)<br><br><br><br>**ORDER** |

---

Pursuant to 42 U.S.C. § 405(g), Plaintiff Mark M. seeks judicial review of a final decision by the Defendant Commissioner of the Social Security Administration, denying Plaintiff's application for supplemental security income ("SSI"). The matter is now before the Court on the parties' Briefs (Dkt. Nos. 12, 14, 16) and Plaintiff's Notice of Supplemental Authority (Dkt. No. 18). Plaintiff argues that the final decision should be reversed for four reasons: (1) the administrative law judge ("ALJ") who issued the decision did not properly evaluate the opinion of Dr. Billy Anderson; (2) Plaintiff meets Listing 12.02 (Neurocognitive Disorders) at step three of the sequential evaluation; (3) the ALJ improperly substituted his own opinion for Plaintiff's medical sources; and (4) the ALJ erred in accepting the vocational expert's testimony. The Commissioner asks the Court to

---

[1] The District of Minnesota has adopted a policy of using only the first name and last initial of nongovernmental parties in Social Security cases.

affirm the decision. As set forth fully below, the Court concludes that the ALJ did not err and affirms the Commissioner's decision.

## I. Background

People with disabilities can qualify for financial support from the Social Security Administration ("SSA") through one or both of its assistance programs: the DIB Program under Title II of the Social Security Act and the SSI Program under Title XVI of the Act. *See Smith v. Berryhill*, 587 U.S. 471, 475 (2019). The DIB Program provides support to those who worked and had sufficient Social Security taxes withheld from their pay over their working life to qualify for coverage if they become disabled. *See id.*; 42 U.S.C. § 423(a) (guaranteeing benefits for insured disabled people). The SSI Program is a public assistance program that provides support to people with disabilities, whether or not they have paid Social Security taxes, and who demonstrate financial need. *See Smith*, 587 U.S. at 475; 42 U.S.C. § 1381a (guaranteeing support to eligible "aged, blind, or disabled" people); 20 C.F.R. § 416.110 (explaining program's purpose).

Plaintiff filed an application for SSI on December 4, 2020, alleging that his disability began on that day. (*See* Soc. Sec. Admin. R. (hereinafter "R.") 16, 783.)[2] Plaintiff's alleged impairments were neuropathy, diabetes, asthma, lower back issues, and anxiety. (R. 95.) His SSI application was denied at both the initial and reconsideration

---

[2] The Social Security administrative record is filed at Dkt. No. 6. The record is consecutively paginated on the lower right corner of each page, and the Court's record citations are to those page numbers, not the page numbers assigned by CM/ECF or PACER.

stages of review, and upon his request, an administrative hearing was held before an ALJ. The ALJ issued a written decision on February 24, 2023, finding that Plaintiff was not disabled. (R. 16–29.) Plaintiff requested review by the Appeals Council, but his request was denied. (R. 1.) Plaintiff filed an action for judicial review, which was resolved by the parties' stipulation for a remand. *See Mark M. v. O'Malley*, No. 23-CV-3249 (ECW).

On remand, the ALJ conducted a supplemental hearing on February 11, 2025, at which Plaintiff and a vocational expert ("VE") testified. (R. 815.) The ALJ issued a partially favorable decision on March 7, 2025. (R. 779.) The ALJ found that Plaintiff was not disabled before November 25, 2023, but became disabled as of that date. (R. 783.) In making those determinations, the ALJ followed the familiar five-step sequential analysis described in 20 C.F.R. § 416.920.[3] At each step, the ALJ considered whether Plaintiff was disabled based on the criteria of that step. If he was not, the ALJ proceeded to the next step.

The ALJ first determined that Plaintiff had not engaged in substantial gainful activity since December 4, 2020. (R. 785.) At the second step, the ALJ found that Plaintiff had the severe impairments of "lumbar degenerative disc disease; diabetes mellitus with peripheral neuropathy; asthma, emphysema; cardiomegaly and heart murmur, status post ventricular septal defect repair; mild neurocognitive disorder, and borderline intellectual

[3] The five steps are "(1) whether claimant is engaged in substantial gainful activity, (2) whether claimant has a severe impairment, (3) whether the impairment meets or equals the severity of a listed impairment, (4) whether claimant has the residual functional capacity to perform past relevant work activity, and (5) if claimant is unable to do past work, whether claimant can perform other work." *Delph v. Astrue*, 538 F.3d 940, 946 (8th Cir. 2008) (citing *Smith v. Shalala*, 987 F.2d 1371, 1373 (8th Cir. 1993)).

functioning." (R. 785). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 788.)

Between steps three and four, the ALJ assessed Plaintiff's RFC, which is a measure of "the most you can still do despite your limitations." 20 C.F.R. § 416.945(a)(1). Here, the ALJ assessed Plaintiff with the RFC

> to perform light work as defined in 20 [C.F.R. §] 416.967(b) except the claimant can occasionally climb, balance, stoop, kneel, crouch and crawl; he can have no exposure to temperature extremes, humidity, or concentrated levels of airway irritants; the individual can understand, remember, and carry out simple instructions. The individual can perform tasks that do not involve a specific production rate pace, such as assembly line work or an hourly production quota.

(R. 792.) Plaintiff had no past relevant work for the ALJ to consider at step four. (R. 802.) The ALJ therefore proceeded to step five of the sequential evaluation. (R. 28.) Due to a change in Plaintiff's age category during the time period under consideration, the ALJ made two disability determinations. Prior to November 25, 2023, Plaintiff was capable of performing work that existed in significant numbers in the national economy, namely, working as a housekeeper/cleaner, hand bander, or power-screwdriver operator. (R. 803.) Thus, he was not disabled before that date. (R. 804.) By application of the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2,[4] however, Plaintiff

[4] The Medical-Vocational Guidelines are a table of rules used to determine a claimant's capability to work depending on the claimant's RFC, age, education, and work experience. *See* Social Security Ruling 83-10, 1983 WL 31251, at *1 (SSA 1983).

became disabled as of November 25, 2023. (R. 804.) The ALJ's decision became the final decision of the Commissioner pursuant to 20 C.F.R. § 416.1484(d).

## II. Standard of Review

Judicial review of the Commissioner's denial of benefits is limited to determining whether substantial evidence on the record as a whole supports the decision, 42 U.S.C. § 405(g), or whether the ALJ's decision resulted from an error of law, *Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1089 (8th Cir. 2018). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). The Court must "consider evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Id*. (citing *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)). The Court may not reverse the ALJ's decision simply because substantial evidence would support a different outcome or the Court would have decided the case differently. *Id.* (citing *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993)). In other words, if it is possible to reach two inconsistent positions from the evidence and one of those positions is that of the Commissioner, the Court must affirm the decision. *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992).

A claimant has the burden to prove disability. *See Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995). To meet the definition of disability for SSI, the claimant must establish that "he is unable to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).

## III. Discussion

### A. Whether the ALJ Properly Evaluated the Opinion of Dr. Billy Anderson

Plaintiff argues that the ALJ failed to consider the supportability and consistency of Dr. Anderson's opinion. (Pl.'s Br. at 15.) In particular, Plaintiff argues that Dr. Anderson's opinion was supported by and consistent with the opinions of two other psychologists, Dr. Jay Phillippi and Dr. David Hall, and a neuropsychological evaluation by psychologist Dr. Jeffrey Kearney. (*Id.*)

Certain regulations govern the SSA's consideration of prior administrative medical findings. *See* 20 C.F.R. § 416.920c. When a medical source provides a medical opinion or prior administrative medical findings, the ALJ must consider the persuasiveness of the opinion or findings "using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate." 20 C.F.R. § 416.920c(a). Those five factors are supportability, consistency, relationship with the claimant, specialization, and any other relevant considerations. 20 C.F.R. § 416.920c(c)(1)–(5). The two most important factors are supportability and consistency. 20 C.F.R. § 416.920c(b)(2). "The ALJ need not use the magic words of 'supportability' and 'consistency,' but it must be clear they were addressed." *Svendsen v. Kijakazi*, No. 1:21-CV-1029-CBK, 2022 WL 2753163, at *8

(D.S.D. July 14, 2022). The ALJ "may, but [is] not required to," explain how the remaining factors were considered. 20 C.F.R. § 416.920c(b)(2).

An ALJ assesses supportability by analyzing how well the medical source's prior administrative medical findings are justified by that source's use of objective medical evidence. "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(1). Simply put, the more objective evidence a medical source adduces to support the findings, the more persuasive the findings are.

An ALJ assesses consistency by considering that "[t]he more consistent a medical opinion(s) or prior administrative finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(2). That is, the ALJ evaluates whether the prior administrative findings are consistent with evidence from sources other than the source who rendered the opinion.

In other words, supportability looks to how well the medical source justifies their own opinion with evidence from the record, and consistency looks to how well the medical source's opinion fits with other sources from the record.

The ALJ must not only consider the regulatory factors but also articulate that consideration. *See* 20 C.F.R. § 416.920c(a) ("We will articulate how we considered the

medical opinions and prior administrative medical findings in your claim according to paragraph (b) of this section."); *id.* § 416.920c(b) ("We will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in your case record."). Given that the supportability and consistency factors are the most important factors to the persuasiveness determination, an ALJ "*will explain* how [the ALJ] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative findings." 20 C.F.R. § 416.920c(b)(2) (emphasis added). The ALJ's failure to articulate how the ALJ considered the consistency factor or the supportability factor is a legal error that may warrant remand. *Susan H. v. Kijakazi*, No. 21-CV-2688 (ECT/ECW), 2023 WL 2142786, at *3 (D. Minn. Feb. 21, 2023); *Michael B. v. Kijakazi*, No. 21-CV-1043 (NEB/LIB), 2022 WL 4463901, at *2 (D. Minn. Sept. 26, 2022); *Joel M. B. v. Kijakazi*, No. 21-CV-1660 (PAM/ECW), 2022 WL 1785224, at *3 (D. Minn. June 1, 2022) (citing *Lucus v. Saul*, 960 F.3d 1066, 1070 (8th Cir. 2020)).

### 1. Dr. Anderson's Opinion

On a Mental Functioning Questionnaire completed on January 20, 2023, Dr. Anderson opined that Plaintiff would have marked limitations in all areas of mental functioning, would be off-task 20% of the time, would need unscheduled breaks, would be absent from work more than three times a month, and could work only 10–15 hours a week. (R. 658–60.) The ALJ articulated that these limitations were not well supported by objective findings on the questionnaire or by Dr. Anderson's own treatment records. (R.

797.) The ALJ summarized treatment records documenting, for example, Plaintiff's reports of no problems with concentration, Plaintiff's cooperative and respectful demeanor, fair mood and neutral affect, improved depression, improved stress management, and better sleep. (R. 797.) The ALJ also articulated that Dr. Anderson's opinion was inconsistent with Plaintiff's own reports of symptoms, observations made by Plaintiff's other providers, and other objective testing. (R. 798.) The ALJ identified specific examples of these inconsistencies in the record. (R. 798.)

In addition to the above inconsistencies, the ALJ noted that Dr. Anderson's opinion was inconsistent with his recommendation that Plaintiff seek employment. (R. 797; *see* R. 692.) Plaintiff takes particular issue with this finding. (Pl.'s Reply at 4.) In the relevant progress note, Dr. Anderson wrote that Plaintiff was looking for employment, that Plaintiff felt his mental condition "may impact his ability to work but he was willing to give it a try," and that "getting a job has to be on his radar or applying for SSI may be the other option." (R. 692.) Dr. Anderson also gave Plaintiff "a referral to look into [a] job opportunity that may be helpful, FDC, Fulfillment Distribution Center." (R. 692.) The Court finds that the ALJ did not mischaracterize Dr. Anderson's progress note. Dr. Anderson was supportive of Plaintiff's search for employment and gave him a referral for a job opportunity. Moreover, Dr. Anderson's progress note was only one of several inconsistent or non-supportive treatment records the ALJ described. Overall, the ALJ's consideration of the persuasiveness of Dr. Anderson's opinion was supported by substantial evidence and contained no legal error.

### 2. Dr. Phillippi's and Dr. Hall's Opinions

Plaintiff argues that Dr. Anderson's opinion was consistent with opinions from Dr. Phillippi and Dr. Hall, which the ALJ should have acknowledged in assessing the persuasiveness of Dr. Anderson's opinion. (Pl.'s Br. at 15, 18.) The ALJ found these options were not persuasive, however, so despite any consistencies, they would not have bolstered the persuasiveness of Dr. Anderson's opinion.

After a neuropsychological evaluation of Plaintiff, Dr. Hall opined in December 2024 that Plaintiff struggled with most areas of cognitive functioning, but the only specific functional limitation in his report was a need for unspecified breaks. (R. 1417.) The ALJ found the unspecified-breaks limitation not persuasive because it was not supported by a strong and detailed explanation; it was conditioned by the word "might"; Dr. Hall's evaluation occurred after the November 25, 2023 date by which Plaintiff had been deemed disabled; Dr. Hall did not have the entire record available to the ALJ; and the limitation was inconsistent with mental-examination findings of intact cognition. (R. 799.)

Dr. Phillippi completed a consultative examination of Plaintiff in May 2024 and opined that Plaintiff had marked limitations in several areas of functioning. (R. 1335–36.) The ALJ deemed the opinion not persuasive overall because it was completed after the November 25, 2023 disability date and was not consistent with evidence in the file during the relevant time period preceding the disability date. (R. 800.) The ALJ acknowledged that the opinion was well supported by Dr. Phillippi's examination and narrative, however. (R. 800.)

Plaintiff argues that the ALJ should not have found Dr. Hall's and Dr. Phillippi's opinions "unpersuasive simply because the evaluations occurred after [his] 55th birthday." (Pl.'s Br. at 19.) Plaintiff points out that his neurocognitive impairment began years earlier, and there was no new trauma or diagnosis that triggered the finding of disability as of the date he turned 55 years old. (Pl.'s Br. at 18–19.) Plaintiff contends that "timing alone" cannot justify the ALJ's persuasiveness determinations. (*Id.* at 19.)

The flaw in Plaintiff's argument is that the ALJ did not base his persuasiveness determinations on "timing alone." The ALJ also found Dr. Hall's opinion unsupported by his own narrative explanation, conditioned on the term "might," and inconsistent with other evidence; and the ALJ found Dr. Phillippi's opinion inconsistent with other evidence, which the ALJ had summarized in an earlier part of the decision.

As to whether the ALJ erred by considering the timing of the opinions as part of the persuasiveness evaluation, Plaintiff is correct that an ALJ may not deem an opinion not persuasive solely due to retrospectivity. *See Mike S. v. Saul*, No. 18-CV-1740 (BRT), 2019 WL 3553800, at *2–3 (D. Minn. Aug. 5, 2019). However, an ALJ does not err by considering the proximity of an opinion to the relevant timeframe as one part of the persuasiveness evaluation. *See Rogers v. Chater*, 118 F.3d 600, 602 (8th Cir. 1997) (endorsing an ALJ's decision to give greater weight to opinions issued closer in time to the potential period of disability); *Thompson v. O'Malley*, No. 4:23-CV-149 PLC, 2024 WL 940419, at *9 (E.D. Mo. Mar. 4, 2024) (finding that "the ALJ did not err in considering the timing of [an] opinion in evaluating the persuasiveness of the opinion"). In *Mike S.*, a

medical source provided opinion evidence more than two years after the relevant timeframe, but that alone was not a good reason to give the opinion little weight because the doctor had treated the plaintiff for years and offered a longitudinal view of the plaintiff's medical history. 2019 WL 3553800, at *2–3.

Here, the ALJ noted that Dr. Hall met with Plaintiff one time and for the sole purpose of administering neuropsychological testing. Dr. Hall did not have a treatment relationship with Plaintiff that could have provided a longitudinal perspective, and as the ALJ pointed out, he did not have the entire record, as compiled for the ALJ, to review. The ALJ did not err in considering the timing of Dr. Hall's opinion as part of the persuasiveness determination, because the ALJ at least implied why the timing was material.

Dr. Phillippi also evaluated Plaintiff only once. The ALJ referred to his earlier discussion of the "paragraph B" criteria[5] as support for his finding that Dr. Phillippi's opinion was inconsistent with evidence from the relevant timeframe. In that discussion, the ALJ summarized evidence from December 4, 2020 to November 25, 2023 and concluded

---

[5] When a claimant has a medically determinable mental impairment, the ALJ must use a "special technique" and rate four broad functional areas known as the "paragraph B" criteria: (1) "[u]nderstand, remember, or apply information"; (2) "interact with others"; (3) "concentrate, persist, or maintain pace"; and (4) "adapt or manage oneself." 20 C.F.R. § 416.920a(c)(3); *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A)(2)(b). The applicable ratings are "none," "mild," "moderate," "marked," and "extreme." 20 C.F.R. § 416.920a(c)(4); 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(F)(2). A "marked" limitation means that a person's "functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(F)(2)(d). A "moderate" limitation means that a person's "functioning in this area independently, appropriately, effectively, and on a sustained basis is fair." *Id.* § 12.00(F)(2)(c).

that Plaintiff was moderately limited in concentrating, persisting, or maintaining pace; moderately limited in understanding, remembering, or applying information; not limited in interacting with others; and mildly limited in adapting or managing himself.

For example, Plaintiff said he could follow written and spoken instructions "very well." (R. 790.) He could manage his finances, shop, use public transit, date, attend group therapy, socialize, play cards, and attend church. (R. 790.) His providers described his memory as intact, speech as normal, mood as normal, affect as appropriate, judgment and insight as intact, and thoughts as logical and goal-directed. (R. 790, 791–92.) The ALJ acknowledged that Plaintiff's IQ, working memory, and verbal comprehension were borderline, and his verbal comprehension, perceptual reasoning, and processing speed were below average, but those limitations were moderate, not marked. (R. 790.) Plaintiff had no problems getting along with family, friends, neighbors, or authority figures. (R. 790.) Plaintiff could pay attention for a long time and persist at tasks until they were completed. (R. 791.) His providers described his attention and concentration as focused. (R. 791.) Plaintiff could handle changes in routine and stress "very well." (R. 791.) He managed his symptoms with medication and counseling. (R. 792.)

This evidence (and the other evidence summarized by the ALJ) was inconsistent with Dr. Phillippi's conclusions that Plaintiff was markedly limited in understanding and memory, sustaining concentration and persistence, and interacting socially; and moderately limited in adapting himself. Therefore, the ALJ did not err in considering the timing of Dr. Phillippi's opinion as part of the persuasiveness determination, because the ALJ explained

elsewhere in the decision why the opinion was inconsistent with evidence during the relevant timeframe.

In sum, the ALJ committed no legal error in assessing the persuasiveness of Dr. Phillippi's and Dr. Hall's opinions, and substantial evidence supports the ALJ's assessments. Consequently, while aspects of Dr. Phillippi's and Dr. Hall's opinions may be consistent with Dr. Anderson's, any such consistency is not helpful to Plaintiff because those opinions were deemed not persuasive.

**3. Dr. Kearney's Evaluation**

Dr. Kearney completed a neuropsychological evaluation of Plaintiff on March 3, 2022. (R. 772–78.) The ALJ noted that Dr. Kearney's report did not include an opinion regarding Plaintiff's work-related limitations or capabilities, but the ALJ found the report consistent with and supportive of moderate limitations regarding Plaintiff's ability to understand, remember, and carry out instructions and his ability to concentrate, persist, and maintain pace. (R. 801.) In reaching that finding, the ALJ accepted Dr. Kearney's assessment of borderline intellectual functioning, poor organization and planning abilities, borderline sustained concentration, slowed cognitive functioning, and ability to learn and retain information. (R. 801.) The ALJ also accepted Dr. Kearney's diagnoses of a mild neurocognitive disorder and borderline intellectual functioning. (R. 801.) The ALJ limited Plaintiff in the RFC to simple instructions and to tasks without a specific production rate pace, specifically to accommodate borderline intellectual functioning and a mild neurocognitive disorder. (R. 796.)

Plaintiff argues that Dr. Kearney's evaluation is consistent with the marked limitations opined by Dr. Anderson. (Pl.'s Br. at 19.) The Court disagrees. Dr. Kearney's observations, conclusions, and recommendations are more consistent with moderate limitations than marked limitations. Dr. Kearney documented that Plaintiff lived and cared for himself independently. (R. 773.) He observed during the evaluation that Plaintiff was alert, oriented, well-spoken, and attentive, if also bland in affect and "a bit diminished" in grooming. (R. 774.) Dr. Kearney's conclusions included average spelling skills, borderline arithmetic skills, borderline constructional skills, intact and expressive language skills, low-average to average fluency, average attentional skills, borderline to average sustained concentration skills, borderline to moderately impaired cognitive processing speed, average memory, low-average retention, low-average delayed free recall, average immediate visual memory, borderline delayed recall visual memory, mildly impaired verbal abstract reasoning, low-average novel problem-solving skills, borderline set-shifting skills, and very poor organization and planning skills. (R. 775.) These conclusions led to Dr. Kearney's findings of a borderline range of overall intellect, stable intellectual functioning over time, and the capacity to learn and retain information. (R. 775.) Dr. Kearney's recommendations included following through with mental health services, presentation of information in simple terms with repetition, a healthy diet, regular exercise, adequate sleep, smoking cessation, and remaining socially and mentally active. (R. 776.) Dr. Kearney's evaluation was consistent with and supportive of moderate limitations, not marked or extreme limitations.

### B. Whether the ALJ Erred by Concluding at Step Three that Plaintiff Did Not Meet Listing 12.02 (Neurocognitive Disorders)

Plaintiff argues that the ALJ should have determined that Plaintiff met Listing 12.02 for a neurocognitive disorder because he is markedly limited in the ability to understand, remember, or apply information; markedly limited in his ability to interact with others; and markedly limited in his ability to concentrate, persist, or maintain pace.[6] (Pl.'s Br. at 26, 28, 29.) Plaintiff's argument is predicated on the Court finding that the ALJ erred in evaluating Dr. Anderson's and Dr. Phillippi's opinions. (Pl.'s Br. at 26, 28, 29.) The Court found that the ALJ did not err in those evaluations, however. As set forth above, the ALJ properly evaluated the opinions pursuant to 20 C.F.R. § 416.920c, and substantial evidence supports the ALJ's consideration of the medical opinions.

In addition, substantial evidence supports the ALJ's conclusion at step three that Plaintiff did not meet Listing 12.02. To support the finding that Plaintiff was moderately limited in understanding, remembering, or applying information, the ALJ described evidence of Plaintiff's ability to follow written and spoken instructions; Plaintiff's daily activities such as managing his finances, shopping, and using public transit; observations and testing by providers including intact memory, normal speech, logical thoughts, full orientation, well-articulated speech, and average spelling skills. (R. 790.) But the ALJ also took into account Plaintiff's borderline IQ, borderline verbal comprehension, below-

---

[6] To meet Listing 12.02, a claimant must have a marked limitation in two of the four areas of mental functioning listed in paragraph B, in addition to satisfying the paragraph A criteria. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.02.

average perceptual reasoning, low-average working memory, and below-average processing speed. (R. 790.) These moderate limitations were incorporated into the RFC by limiting Plaintiff to simple instructions. (R. 790.)

To support the finding that Plaintiff had no limitation in interacting with others, the ALJ described evidence of Plaintiff's reported ability to get along with family, friends, authority figures, and neighbors; no history of being let go from a job due to trouble interacting with others; and daily activities such as dating, participating in group therapy, mentoring others, shopping in stores, using public transit, talking and playing cards with others, and attending church. (R. 790.) In addition, Plaintiff was cooperative with his providers and had normal eye contact and speech. (R. 791.)

To support the finding that Plaintiff had a moderate limitation in interacting with others, the ALJ described evidence of Plaintiff's statements that he could pay attention for a long time and work at tasks until they were completed; Plaintiff's daily activities such as watching sports, playing sports, walking, listening to music, and watching television; and observations by his providers such as focused concentration and attention, alertness, and orientation. (R. 791.) To acknowledge that Plaintiff had a moderate limitation in this area, the ALJ limited the pace and quota of work. (R. 791.)

The Court concludes that the ALJ did not err in finding that Plaintiff did not meet Listing 12.02. Substantial evidence supports the ALJ's decision.

### C. Whether the ALJ Substituted His Own Medical Opinion for Those of Plaintiff's Medical Sources

Plaintiff argues that the ALJ improperly substituted his own medical judgment for that of Dr. Anderson, Dr. Phillippi, Dr. Hall, and Dr. Kearney. (Pl.'s Br. at 32.) The ALJ evaluated the opinions of these providers for persuasiveness. Evaluating a medical opinion for its persuasiveness is not only allowed under 20 C.F.R. § 416.920c; it is required. An ALJ who finds an opinion not persuasive after evaluating that opinion's persuasiveness using the methodology prescribed by the regulations, and therefore declines to adopt the limitations set forth in that opinion, is not substituting his own medical judgment for that of the medical source.

Plaintiff next contends the ALJ erred by relying on Plaintiff's physicians' observations and Plaintiff's statements rather than objective testing results. (Pl.'s Br. at 34.) In arguing that the ALJ should have given more weight to some evidence, Plaintiff is essentially asking the Court to re-weigh the evidence, which the Court may not do. *See Austin v. Kijakazi*, 52 F.4th 723, 731 (8th Cir. 2022). A physician's observations and a claimant's statements are acceptable kinds of evidence, just as test results are. *See* 20 C.F.R. § 416.913(a)(3)–(4).

Plaintiff takes issue with the ALJ's reliance on the prior administrative medical findings of state agency consultants Dr. Maria Yapondijian-Alvarado and Dr. Amelia Versland because those consultants reviewed records only pertaining to Plaintiff's depression under Listing 12.04, not his neurocognitive disorder under Listing 12.02. (Pl.'s Br. at 36.) The ALJ acknowledged this qualification in the written decision, however. (R.

787 ("Notably, they both only analyzed the limitations as they pertained to the 12.04 diagnosis and not the mild neurocognitive disorder or the borderline intellectual functioning disorder.").)

Several of Plaintiff's arguments in this section may be addressed briefly. To the extent that Plaintiff argues that no medical source has found he is able to work (Pl.'s Br. at 32), evidence on issues reserved to the Commissioner—such as whether a claimant can perform work—is neither valuable nor persuasive and need not be analyzed. 20 C.F.R. § 416.920(b)(c), (c)(3)(i). To the extent that Plaintiff suggests that no medical *opinion* supported a particular finding or limitation, that is not required. *See Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) ("[T]here is no requirement that an RFC finding be supported by a specific medical opinion."). Medical records prepared by a claimant's doctor are sufficient to support an RFC assessment. *Johnson v. Astrue*, 628 F.3d 991, 995 (8th Cir. 2011); *see also KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 372–73 (8th Cir. 2016) (finding the RFC was adequately supported where the ALJ considered the medical evidence, the plaintiff's reported functioning and activities, and the plaintiff's testimony).

Finally, Plaintiff finds fault with the ALJ's references to Plaintiff's attempts to find work and ability to care for himself. (Pl.'s Br. at 37–39.) These were only minor aspects of the ALJ's decision, however. In addition, seeking work is inconsistent with disabling symptoms, *Dunahoo v. Apfel*, 241 F.3d 1033, 1039 (8th Cir. 2001), and the ALJ mentioned the job search activity as inconsistent with Plaintiff's reported pain (R. 794). The ALJ mentioned several times that Plaintiff was independent in personal care (R. 791, 792, 793,

796), but also acknowledged that Plaintiff was living in a temporary group home for sober living, that his meals were prepared for him, and that other supportive services were provided (R. 793). The ALJ did not err in considering Plaintiff's attempts to find work or his ability to care for himself.

### D. Whether the ALJ Erred in Accepting the VE's Testimony over Plaintiff's Occupational Data

Plaintiff argues that the ALJ erred at step five of the sequential evaluation by not crediting Plaintiff's occupational data from the U.S. Bureau of Labor Statistics' Occupational Requirements Survey ("ORS") over the hearing testimony of the VE. (Pl.'s Br. at 40.)

At the administrative hearing on February 11, 2025, the ALJ asked the VE to consider a hypothetical individual of Plaintiff's age and education, with no past relevant work; who could perform light work; who could occasionally climb, balance, stoop, kneel, crouch, and crawl; who could have no exposure to temperature extremes, humidity, or concentrated levels of airway irritants; who could understand, remember, and carry out simple instructions; who could perform tasks that did not involve a specific production rate pace such as assembly line work or an hourly production quota; and who could not have end-of-day quotas. (R. 827–28.) The VE testified that such an individual could perform jobs in the national economy, representative examples of which would be housekeeper/cleaner, of which there were 190,500 existing positions; hand bander, of which there were 2,000 existing positions; and power-screwdriver operator, of which there were 264,000 existing positions. (R. 828.) The VE testified that he arrived at those numbers

by using a software program, SkillTRAN Job Browser Pro, which distills Standard Occupational Classification ("SOC") jobs into their applicable Dictionary of Occupational Titles ("DOT") job categories and calculates employment numbers based on staffing-pattern surveys sent to employers. (R. 828–29.) The VE does not use ORS data, and all of the data he uses is based on the DOT. (R. 829.) The VE further testified that, with respect to any limitations not addressed by the DOT, his testimony was based on his work experience as a vocational rehabilitation counselor and case manager who performs job analysis, job placement, employer consultation, and worksite observation. (R. 829–30.)

The ALJ allowed Plaintiff to provide a post-hearing brief, which Plaintiff's representative submitted on February 24, 2025. (R. 1063–64.) Plaintiff's counsel argued that the housekeeper/cleaner job and power-screwdriver operator jobs were inconsistent with light work. (R. 1064.) According to Plaintiff, ORS data showed that the housekeeper/cleaner job required standing for 90% or more of the workday, and the power-screwdriver operator job required standing for 84.2% of the workday, whereas light work was limited to 6 hours a day. (R. 1064.) The ORS data attached to the brief showed that for "Assemblers and Fabricators, All Other" jobs, the mean percentage of the day when standing would be required was 84.2%. (R. 1069.) The mean percentage of the day when standing would be required for housekeepers/cleaners was 95.7%, although the 25th percentile of housekeepers/cleaners spent only 5.6 hours standing. (R. 1083.)

The ALJ discussed the VE's testimony and Plaintiff's ORS data in the written decision. The ALJ noted that the VE identified the data sources on which he relied and

provided his general approach to estimating job numbers, in compliance with Social Security Ruling ("SSR") 24-3p.[7] (R. 803.) The ALJ rejected Plaintiff's arguments based on the ORS data for three reasons. First, the ALJ pointed out that the DOT characterized both the housekeeper/cleaner job and the power-screwdriver operator job as light work, and the VE's testimony was consistent with the DOT definitions even though that was no longer required.[8] (R. 804.) Second, the ALJ observed that Plaintiff's argument did not account for breaks in a workday, specifically two 15-minute breaks and a 30-minute lunch break, when Plaintiff would be able to sit. (R. 804.) When the 84% and 95% time-on-feet percentages were applied to the remainder of the workday, the ALJ noted, the jobs were still roughly consistent with light work. (R. 804.) Finally, the ALJ reasoned that, if Plaintiff's argument were accepted, and considering that the time-on-feet requirement for light, medium, heavy, and very heavy work is 6 hours in an 8-hour work day, the jobs of power-screwdriver operator and housekeeper/cleaner would be in excess of even heavy work, which would not be supported by or consistent with the DOT. (R. 804.)

---

[7] Social Security Rulings are binding on all aspects of the SSA and "represent precedent[ial] final opinions and orders and statements of policy and interpretations that we have adopted." 20 C.F.R. § 402.160(b)(1).

[8] In SSR 24-3p, the SSA eliminated the requirement that ALJs resolve conflicts between occupational information provided by a VE and information in the DOT. SSR 24-3p, 2024 WL 4988840 (SSA Jan. 6, 2025). The SSA recognized that the DOT is not the only reliable source of occupational information; for example, the SOC system also provides useful statistical data. *Id.* Indeed, VEs "may use any reliable source of occupational information that is commonly used by vocational professionals and is relevant under our rules, along with their professional knowledge, training, and experience." *Id.*

Plaintiff argues that the ORS data "represents the best available evidence of actual job demands in the national economy" and that "the ALJ's rejection of this evidence without justification constitutes legal error requiring remand." (Pl.'s Br. at 40.) Plaintiff cites no legal support for either of these assertions. (*See id.*) Plaintiff also cites no rule or regulation that requires an ALJ or a VE to credit ORS data above other sources of occupational information, including the DOT. Furthermore, the ALJ did consider the ORS data and explained why he did not accept it. Though Plaintiff may disagree with the ALJ's justification for rejecting the data, which the Court will address below, the ALJ did not commit a legal error by rejecting the data without explanation.

Plaintiff next argues that the power-screwdriver operator and housekeeper/cleaner jobs are not consistent with light work because the ORS data shows that the time spent standing or walking exceeds the 6-hour maximum for light work. (Pl.'s Br. at 40–41.) The Commissioner responds that ALJs are no longer required to identify and resolve conflicts between occupational evidence provided by VEs and sources of occupational data such as the DOT or ORS, pursuant to SSR 24-3p. (Def.'s Br. at 17.)

The SSA rescinded and replaced SSR 00-4p when it promulgated SSR 24-3p. *See* SSR 24-3p, 89 Fed. Reg. 97158-01, 97159 (Dec. 6, 2024). SSR 00-4p required ALJs to resolve conflicts between occupational evidence from a VE and information in the DOT before relying on the VE's testimony. *See id.* SSR 24-3p rescinded that requirement, and the SSA "no longer require[s] our adjudicators to identify and resolve conflicts between occupational information provided by . . . VEs and information in the DOT." *Id.* The SSA

also acknowledged in SSR 24-3p that the DOT is not the only valid and reliable source of occupational information and that other sources of occupational information are reliable and commonly used. *Id.*

By removing the requirement for ALJs to resolve conflicts between VE evidence and the DOT, the SSA did not *add* a requirement for ALJs to resolve conflicts between VE evidence and *other* sources of occupational information such as the ORS. If anything, the promulgation of SSR 24-3p signaled a recognition of an increasing number of valid and reliable sources of occupational information and a consequent steering away from any obligation to reconcile conflicts with each and every one.

Moreover, the conflicts identified by Plaintiff are uncertain. First, the ORS data Plaintiff submitted for the power-screwdriver-operator job is for the job category "Assemblers and Fabricators, All Other." The percentage of time spent standing and walking as a power-screwdriver operator could very well differ from that of "Assemblers and Fabricators, All Other." Although the Commissioner bears the burden at step five to show there are a significant number of jobs in the national economy that a claimant can perform, a claimant's counter evidence must be "significant and probative." *Powley v. Bisignano*, 169 F.4th 1158, 1161 (9th Cir. 2026). Second, the VE testified at the hearing that there were 190,500 existing positions as housekeeper/cleaner. According to the ORS data provided by Plaintiff, the 25th percentile of housekeepers/cleaners spends only 5.6 hours in an 8-hour workday standing (R. 1083), which falls within the standing/walking time limitation for light work. Plaintiff does not acknowledge or explain that particular data

point, nor does he argue that 25% of 190,500 jobs (or 47,625 jobs) is not a significant number of jobs.

After the briefing period closed in this case, Plaintiff filed a Notice of Supplemental Authority, alerting the Court to a decision by the Ninth Circuit Court of Appeals: *Powley v. Bisignano*, 169 F.4th 1158 (9th Cir. 2026). *Powley* held that an ALJ erred by failing to address and resolve inconsistencies between a claimant's significant and probative evidence of job numbers and the VE's evidence. *Id.* at 1161. The Court finds *Powley* unpersuasive for three reasons. First, as discussed above, the ORS data that Plaintiff provided about the power-screwdriver operator job is not significant and probative. Second, Plaintiff has not provided any actual job numbers in opposition to the VE's. Third, Plaintiff has not shown that his attorney replicated the VE's methodology, used the same software, or has expertise in calculating job numbers. *See id.* at 1167–68. Thus, *Powley* is of no help to Plaintiff.

The ALJ provided two other reasons for finding that the housekeeper/cleaner job and the power-screwdriver operator job were light work, despite Plaintiff's ORS data. The first line of reasoning was that the time-on-feet requirement would be six hours for light, medium, heavy, and very heavy work. (R. 804.) The ALJ's reasoning—at least with respect to medium work—is well-taken. Medium work requires standing or walking for a total of approximately 6 hours in an 8-hour workday. SSR 83-10, 1983 WL 31251, at *6 (SSA 1983). Adopting Plaintiff's rationale would mean that the jobs of power-screwdriver

operator and housekeeper/cleaner would be in excess of even medium work, which would not be supported by or consistent with the DOT.

The ALJ's other line of reasoning subtracted 60 minutes of seated break time (two 15-minute breaks and one 30-minute lunch break) from the 8-hour workday before applying the time-on-feet percentages to the remainder of the day. (R. 804.) Plaintiff argues that breaks are not required or guaranteed, and even if they were, there is no guarantee he could sit for the entirety of the breaks. (Pl.'s Br. at 41–42.) The Commissioner did not respond to this argument. (*See* Def.'s Br. at 16–17.) Even if the ALJ erred in this respect, however, it would not affect the other justifications for rejecting the ORS data, and the Court need not discuss this rationale further.

In sum, the ALJ did not err in accepting the VE's testimony over Plaintiff's occupational data. The VE's testimony was based on widely accepted and reliable software and information sources, as well as his professional knowledge, training, and experience. The ALJ adequately considered and addressed the ORS data provided by Plaintiff and explained why it was not material or relevant.

## IV. Conclusion

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT**:

1. The relief requested in Plaintiff's Brief (Dkt. No. 12) and Plaintiff's Reply Brief (Dkt. No. 16) is **DENIED**;
2. The relief requested in Defendant's Brief (Dkt. No. 14) is **GRANTED**; and

3. The Commissioner's final decision is affirmed.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Date: September 1, 2026

*s/ John F. Docherty*
JOHN F. DOCHERTY
United States Magistrate Judge